UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID DUNCAN MCCANN,**<br><br>    Plaintiff,<br><br>        v.<br><br>**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,**<br><br>    Defendant. | Civil Action No.  10-1758 (JEB) |

**MEMORANDUM OPINION**

*Pro se* Plaintiff David Duncan McCann seeks the release of agency records he requested from Defendant United States Department of Health and Human Services on October 15, 2009, pursuant to the Freedom of Information Act, 5 U.S.C. § 552.  Following HHS's release of more than 1,100 responsive pages, Plaintiff filed this civil action to challenge the agency's withholding of 35 pages under FOIA Exemptions 5, 6, and 7(C).  *See* 5 U.S.C. § 552(b).  HHS now moves for summary judgment under Fed. R. Civ. P. 56, which Plaintiff opposes.  As the agency's claimed exemptions are appropriate, the Court will grant its Motion.

**I.     Background**

In 2006, Plaintiff filed two complaints with HHS's Office of Civil Rights, alleging that his health care provider had provided "political appointees" in Akron, Ohio, access to his "drug records" in violation of the Health Insurance Portability and Accountability Act and seeking an investigation.  *See generally* Compl. ¶¶ 5-18; Resp. to the Dep't of Justice's Opp'n to Pl.'s Disputes of Material Fact ("Pl.'s Surreply") at 2.  After HHS's OCR found no violations, *see*

1

Compl., ¶¶ 17-18, Plaintiff submitted a FOIA request electronically to HHS on Oct. 15, 2009, seeking all records between August 2006 and July 2009 pertaining to the foregoing complaints. Decl. of Robert Eckert [Dkt. # 13-1], Ex. 1. Plaintiff also requested the telephone logs of 10 individuals apparently for that same time period. *Id.*

On March 16, 2010, HHS released to Plaintiff 1,176 of "approximately 1,217 pages of responsive documents." *Id.*, Ex. 2. It withheld 41 pages in their entirety under FOIA Exemptions 5, 6, and 7(C), s*ee* 5 U.S.C. § 552(b), and withheld portions from certain released pages under those same exemptions. Eckert Decl. ¶ 5 (acknowledging that the "response letter incorrectly calculated the withheld pages at 31 [and that] proper calculations subsequently revealed that 41 pages were withheld"). On April 5, 2010, Plaintiff appealed only HHS's withholding of the 41 pages. *Id.*, Ex. 3. In response to Plaintiff's administrative appeal, HHS released six of the previously withheld pages on August 31, 2010. *Id.*, Ex. 4.

Based on the agency's decision to "uphold the denial of the remaining thirty-five (35) pages . . . under FOIA Exemptions (b)(5), (b)(6) and (b)(7)(C)," *id.*, Plaintiff initiated this civil action on October 18, 2010. During the preparation of the index prepared in accordance with *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), Defendant "decided to make a release of 20 pages of redacted emails." Eckert Decl. ¶ 8. In the release letter of May 9, 2011, Defendant redacted information from those pages under Exemption 5. *Id.*, Ex. 6. Fifteen pages – a three-page document and a 12-page document – remain withheld in their entirety. *See id.*, Ex. 5 (*Vaughn* index, Doc. Nos. 1, 10).

**II.    Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Liberty Lobby, Inc.*, 477 U.S. at 248. Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); *Bigwood v. United States Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.' " S*afeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

3

**III.    Analysis**

Plaintiff first contests HHS's redacting of information under FOIA Exemption 5 from the 20 e-mail messages released to him in May 2011.  He also challenges HHS's withholding of the three-page document in its entirety under Exemptions 6 and 7(C) and its withholding of the 12-page document now under Exemption 7(E).[1]  The Court will address each in turn.

    A.    Exemption 5

Exemption 5 generally protects documents that would be unavailable to an opposing party through discovery in civil litigation.  *See U.S. v. Weber Aircraft Corp*., 465 U.S. 792, 800 (1984); *Martin v. Off. of Special Counsel*, 819 F.2d 1181, 1185 (D.C. Cir. 1987) (Exemption 5 "unequivocally" incorporates "all civil discovery rules").  Disclosure of records is only compelled where such records would "routinely be disclosed" in litigation.  *Weber*, 465 U.S. at 800.  Accordingly, courts do not consider the requester's need for the documents.  *Martin*, 819 F.2d at 1184 ("[T]he needs of a particular plaintiff are not relevant to the exemption's applicability.").

HHS redacted from the 20 e-mail messages information revealing the "internal deliberations, among HHS employees, regarding Plaintiff's HIPAA complaints," specifically "advice, recommendations, suggestions, opinion, and analysis about Plaintiff's HIPAA claims."  Eckert Decl. ¶ 11; *see Vaughn* index Doc. Nos. 2-9.  "One of the traditional evidentiary privileges available to the Government in the civil discovery context is the common-sense,

---

[1] The fact that Defendant did not invoke Exemption 7(E) at the administrative level does not preclude it from invoking it in this proceeding.  *See Barnard v. Dep't of Homeland Security*, 598 F. Supp. 2d 1, 24 (D.D.C. 2009) ("[T]here is no requirement that an agency administratively invoke an exemption [under either the FOIA or the Privacy Act] in order to later rely on it in federal court.") (citing cases).

common-law deliberative process privilege." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772 (D.C. Cir. 1978), *overruled on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1053 (D.C. Cir. 1981). This encompasses three main policy purposes, two of which are applicable to this dispute: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; and (2) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *see also Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs*, 147 F.3d 708, 710 (8th Cir. 1998) ("The purpose of the deliberative process privilege is to allow agencies to freely explore alternative avenues of action and to engage in internal debates without fear of public scrutiny.").

Two requirements must be met to permit valid invocation of this privilege. The communication to be withheld must be predecisional — *i.e.*, "antecedent to the adoption of an agency policy," *Jordan*, 591 F.2d at 774, and it must be deliberative — *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975); *accord Loving v. Dep't of Defense*, 550 F.3d 32, 38 (DC. Cir. 2008). A record or document can be predecisional in nature even when an agency subsequently makes a final decision on the issue discussed in the record or document. *See Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 360 (1979).

As Defendant's descriptions of the redacted portions of these emails fall squarely within the parameters of the privilege, *see* Eckert Decl. ¶ 11; *Vaughn* index Doc. Nos. 2-9, the Court finds that it has properly justified withholding such portions as deliberative-process material protected by Exemption 5.

B.  Exemptions 6 and 7(C)

The Court turns next to the withholding of the three-page document under Exemptions 6 and 7(C).  The privacy interest in Exemption 6 is narrower than in Exemption 7(C), so if the withholdings satisfy the former, no examination of the latter is necessary.  Exemption 6 protects withholdings under the following criteria: first, the information must be contained within "personnel and medical files and similar files"; second, the disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy"; and third, if the first two requirements are met, the privacy interest must be weighed against the public interest in disclosure.  *See* 5 U.S.C. § 552(b)(6); *see also Armstrong v. Executive Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996).

Defendant withheld Doc. No. 1 in full under Exemptions 6 and 7(C).  *See* Eckert Decl. ¶¶ 14-15 & *Vaughn* index.  The document "consist[s] of witness interview summaries" that "applied to a particular individual."  Eckert Decl. ¶ 13; *see also Vaughn* index, Doc. No. 1 ("This document contains personal information about individuals who were interviewed as part of an investigation into alleged HIPAA violations.").  Defendant asserts that it withheld the information because "[d]isclosure . . . would constitute an invasion of privacy of [] individuals who provided information to an investigator who was conducting an investigation into Plaintiff's HIPAA complaint."  *Id*. ¶ 14.  Because the individuals were Plaintiff's co-workers, Defendant asserts that "it would be easy to identify [them] if [it] released information from the witness interviews."  *Id*.  Defendant further asserts that "[r]evealing the withheld information could reasonably be expected to cause potential harassment or misuse of the [witness'] information . . . ."  *Id*.

In *United States Department of State v. Washington Post Co.*, 456 U.S. 595 (1982), the Supreme Court held, based upon a review of the legislative history of FOIA, that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. *Id*. at 599–603. The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." *Id*. at 601 (citing H.R.Rep. No. 89–1497 at 11, 1966 U.S.C.C.A.N. 2418, 2428 (1966)); *see Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) ("The Supreme Court has read Exemption 6 broadly, concluding the propriety of an agency's decision to withhold information does not 'turn upon the label of the file which contains the damaging information.' ") (quoting *Wash. Post*, 456 U.S. at 601). Rather, the Court made clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection. 456 U.S. at 602. "[I]nformation about an individual should not lose the protection of Exemption 6 merely because it is stored by an agency in records other than 'personnel' or 'medical' files." *Id*. at 601.

The Court now turns to the third requirement of weighing the competing interests. According to Defendant, each individual's privacy interests outweighed any public interest in disclosure of their information. Eckert Decl. ¶ 14. Plaintiff disagrees. He counters generally that "[t]he release of the 15 pages of documents, and unredacted material will allow the plaintiff and the public to determine the diligence of the HHS/OCR investigations . . . [and] instill[] confidence in the investigative procedures of a governmental agency." Response to DOJ's Opp'n to Pl.'s Disputes of Material Fact at 5. But to overcome the privacy interests at stake, Plaintiff must show that the exempt information is necessary to "shed any light on the [mis]conduct of any Government agency or official." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989); *accord SafeCard Services, Inc.,*

*v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991); *see Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) ("The relevant question . . . is whether Blackwell has shown government misconduct sufficient to overcome Exemption 7(C)'s protection for personal privacy under the test outlined in *National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)."). "Both Exemptions 6 and 7(C) require the balancing of the strong privacy interests in the nondisclosure of third-party records against any asserted public interests in their disclosure.  The analysis is the same under both exemptions." *Sonds v. Huff*, 391 F. Supp. 2d 152, 158 (D.D.C. 2005) (citations omitted).

Plaintiff has the burden of demonstrating the requisite public interest by "produc[ing] evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174.  If a requester can demonstrate that disclosure would serve to "check against corruption and to hold the governors accountable to the governed," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), he can generally satisfy the public interest requirement.  But the balancing test does not even come "into play" when the requester has produced no evidence of impropriety.  *Favish*, 541 U.S. at 175. Plaintiff's desire only to "determine the diligence of [the agency's] investigations" does not present a public interest to trigger the balancing requirement.  Therefore, no basis exists for compelling the release of the three pages of interview notes Defendant properly withheld under Exemption 6.

    C.  <u>Exemption 7(E)</u>

The final withholding concerns the 12-page document – actually, two copies of the same six-page document, *see Vaughn* index, Doc. No. 10 – under Exemption 7(E).  To qualify for protection under Exemption 7, agency records must have been compiled for law enforcement purposes.  To satisfy this requirement, an agency "need only 'establish a rational nexus between

the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'" *Blackwell*, 646 F.3d at 40 (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). The requested records were "compiled to conduct investigations into Plaintiff's civil rights complaints," Eckert Decl. ¶ 15, and a violation of the HIPAA Privacy Rule could subject one to civil or criminal penalties. *See* 42 U.S.C. § 1320d-5.

As the D.C. Circuit explained in *Jefferson v. Dept. of Justice*, 284 F.3d 172 (D.C. Cir. 2002), "[I]f the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees." *Id.* at 177 (citation omitted); *see also Lurie v. Dept. of Army*, 970 F. Supp. 19, 36 (D.D.C. 1997) ("An agency investigation is considered to be for law enforcement purposes if it focuses directly on specifically alleged illegal acts, illegal actions of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.") (internal quotation marks and citation omitted) As this case involved the investigation of a health care provider for HIPAA violations, the threshold law enforcement requirement is met. *See Ortiz v. Dept. of Health & Human Services*, 70 F.3d 729, 732-33 (2d Cir. 1995) (Exemption 7 applicable to HHS Inspector General, who engaged in law enforcement activities when investigating possible Social Security fraud; no requirement of actual existence of a crime); *Sakamoto v. EPA*, 442 F. Supp. 2d 1182, 1194-95 (N.D. Cal. 2006) (Exemption 7's law-enforcement purposes applicable to EPA's OCR's investigation of complaints of discrimination).[2]

---

[2] Given this determination, the Court notes that Defendant also properly withheld Doc. No. 1 under Exemption 7(C), insofar as this exemption "categorically exempt[s]" third-party records from disclosure in the absence of an overriding public interest. *Nation Magazine, Washington*

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The District of Columbia Circuit has "set[] a relatively low bar for the agency to justify withholding" such records, insofar as the agency is required only to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

Defendant relied on this exemption in withholding Doc. No. 10, which is a six-page internal document and a duplicate that contain "procedures, techniques, and guidelines for investigating potential violations of the HIPAA Privacy Rule by hybrid entities." Eckert Decl. ¶ 18 & *Vaughn* index. According to Eckert, the release of the document would "disclose methods used in law enforcement and could reduce or nullify the effectiveness of the methods [because] it would alert entities as to how they can fashion their operations so as to elude compliance with the HIPAA Privacy Rule." *Id*. Considering the availability of civil and criminal penalties for HIPAA violations, Defendant reasonably contends that the disclosure of information about the agency's investigatory tools could "risk circumvention of the law." Eckert Decl. ¶ 18.

---

*Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995); *see Blackwell*, 646 F.3d at 41 ("As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information.") (citing cases).

D.  Segregability of Withheld Documents

The Court is also required to determine whether Defendant properly withheld Doc. Nos. 1 and 10 in their entirety. *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) (instructing that district court has "an affirmative duty to consider the segregability issue *sua sponte*" if not otherwise raised by the parties).

Eckert indicates that the documents were "scrutinized" for segregability, Eckert Decl. ¶ 14, and states that "[f]or records withheld in their entirety, there was no reasonably segregable material or [any] non-exempt information amounted to essentially meaningless words and phrases." *Id*. ¶ 19.  Defendant has thus properly justified withholding Doc. Nos. 1 and 10 in full. *See Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) ("[A]ny non-exempt information must be segregated and released . . . unless the exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value.") (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)) (other citation and internal quotation marks omitted).

**IV.   Conclusion**

Because HHS properly redacted information from the released e-mail messages under FOIA Exemption 5 and properly withheld Document 1 under Exemptions 6 and 7(C) and Document 10 under Exemption 7(E), the Court will grant Defendant's motion for summary judgment.  A separate Order accompanies this Memorandum Opinion.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 15, 2011